JUDGE RAMOS 15 CV 01632

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JANEZ DEMSAR, Individually and on Behalf of All Other Persons Similarly Situated, Plaintiff(s), | Civil Action No.: |
| v. | CLASS ACTION |
| CORPORATE RESOURCE SERVICES, INC., JOHN P. MESSINA, SR., MICHAEL J. GOLDE, JOSEPH CASSERA, ROBERT CASSERA, JAMES ALTUCHER, JAMES FOLEY, KAREN AMATO, THOMAS J. CLARKE, JR., LARRY MELBY, and SYLVAN HOLZER, Defendants. | **JURY TRIAL DEMANDED** |

RECEIVED
MAR 05 2015
U.S.D.C. S.D. N.Y.
CASHIERS

**COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS**

Plaintiff Janez Demsar ("Plaintiff"), individually and on behalf of all other persons similarly situated, by Plaintiff's undersigned attorneys, for Plaintiff's Complaint against Defendants, alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and upon information and belief as to all other matters based on the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of U.S. Securities and Exchange Commission ("SEC") filings by Corporate Resource Services, Inc. ("Corporate Resource Services" or the "Company"), as well as media and analyst reports about the Company. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1. This is a federal securities class action on behalf of a class consisting of all persons other than Defendants who purchased the common stock of Corporate Resource Services between July 1, 2014 and February 6, 2015 (the "Class Period"), inclusive, seeking to recover compensable damages caused by Defendants' violations of federal securities laws and pursue remedies under the Securities Exchange Act of 1934 (the "Exchange Act").

## JURISDICTION AND VENUE

2. The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act, (15 U.S.C. §78j (b) and 78t (a)), and Rule 10b-5 promulgated thereunder (17 C.F.R. §240.10b-5).

3. This Court has jurisdiction over the subject matter of this action pursuant to §27 of the Exchange Act (15 U.S.C. §78aa) and 28 U.S.C. § 1331.

4. Venue is proper in this Judicial District pursuant to §27 of the Exchange Act, 15 U.S.C. § 78aa and 28 U.S.C. § 1391(b) as Defendant Corporate Resource Services maintains an office and conducts business in this District.

5. In connection with the acts, conduct and other wrongs alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mails, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

6. Plaintiff, as set forth in the accompanying certification, incorporated by reference herein, purchased Corporate Resource Services common stock at artificially inflated prices during the Class Period and has been damaged thereby.

7. Defendant Corporate Resource Services is a Delaware Corporation headquartered in New York, New York, which provides diversified technology, staffing, recruiting, and consulting services in the United States. During the Class Period, the Company's stock was traded on the NASDAQ Stock Exchange ("NASDAQ") under the symbol "CRRS."

8. Defendant John P. Messina ("Messina") has been the Company's Chairman and Chief Executive Officer at all relevant times. Messina has been employed by Tri-State Employment Services, Inc. ("TSE") since 1997 and has served as Executive Vice President of TSE since January 1998.

9. Defendant Michael J. Golde ("Golde") has been the Company's Chief Financial Officer at all relevant times until his resignation on January 12, 2015. He was replaced by Joseph P. Ciavarella, who resigned on February 20, 2015.

10. Defendant Joseph Cassera ("J. Cassera") has been a Director of the Company at all relevant times. J. Cassera has served as Vice President of Operations of TSE since January 2001 and is the brother is Robert Cassera.

11. Defendant Robert Cassera ("R. Cassera") has been a Director of the Company at all relevant times until his resignation on February 4, 2015. As of November 21, 2014, R. Cassera beneficially owned approximately 79.4% of the outstanding common stock of Corporate Resource Services. R. Cassera is the founder, sole owner, and has been the president and director of TSE since 1993 and is the brother of J. Cassera.

12. Defendant James Altucher ("Altucher") has been a Director of the Company at all relevant times until his resignation on February 10, 2015.

13. Defendant James Foley ("Foley") has been a Director of the Company at all relevant times. Foley has been Chief Operating Officer of TSE since 1997.

14. Defendant Karen Amato ("Amato") has been a Director of the Company and the Chairman of the Company's Audit Committee at all relevant times until her resignation on September 28, 2014.

15. Defendant Thomas J. Clarke, Jr. ("Clarke") has been a Director of the Company and a member of the Audit Committee at all relevant times until his resignation on February 5, 2015.

16. Defendant Larry Melby ("Melby") has been a Director of the Company and a member of the Audit Committee at all relevant times until his resignation on February 5, 2015.

17. Defendant Sylvan Holzer ("Holzer") was a Director of the Company and the Chairman of the Company's Audit Committee from September 29, 2014 until his resignation on February 5, 2015.

18. Defendant Messina, Golde, J. Casseram, R. Cassera, Altucher, Foley, Amato, Clarke, Melby, and Holzer are collectively referred to hereinafter as the "Individual Defendants."

19. Each of the Individual Defendants:

(a) directly participated in the management of the Company;

(b) was directly involved in the day-to-day operations of the Company at the highest levels;

(c) was privy to confidential proprietary information concerning the Company and its business and operations;

(d) was directly or indirectly involved in drafting, producing, reviewing and/or disseminating the false and misleading statements and information alleged herein;

(e) was directly or indirectly involved in the oversight or implementation of the Company's internal controls;

(f) was aware of or recklessly disregarded the fact that the false and misleading statements were being issued concerning the Company; and/or

(g) approved or ratified these statements in violation of the federal securities laws.

20. Corporate Resource Services is liable for the acts of the Individual Defendants and its employees under the doctrine of *respondeat superior* and common law principles of agency because all of the wrongful acts complained of herein were carried out within the scope of their employment.

21. The scienter of the Individual Defendants and other employees and agents of the Company is similarly imputed to Corporate Resource Services under *respondeat superior* and agency principles.

22. Defendant Corporate Resource Services and the Individual Defendants are collectively referred to hereinafter as the "Defendants."

## **SUBSTANTIVE ALLEGATIONS**

### **Background**

23. Corporate Resource Services is a national provider of diversified staffing, recruiting and consulting services, including temporary staffing services, with a focus on light industrial services, the insurance industry and clerical and administrative support.

24. R. Cassera effectively controls Corporate Resource Services and its Board of Directors as his majority ownership of the Company gives him the ability to cause the election of all of the members of the Board, appoint new management, and approve actions requiring the approval of our shareholders.

25. R. Cassera has interest in and controls a group of affiliated entities, including Tri-State Employment Services, Inc. ("TSE") and its wholly owned subsidiaries TS Employment, Inc. ("TS Employment") and TSE-PEO, Inc. ("TSE-PEO") (collectively, "Tri-State").

26. On August 27, 2010, Corporate Resource Services entered into a Master Service Agreement with Tri-State's affiliates TS Employment and TSE-PEO. These agreements provide for the provision of professional employer services for the Company and its subsidiaries.

27. Tri-State provides professional employer services to the Company as part of a co-employment arrangement where Tri-State is the employer of record and the Company is the worksite employer. Professional employer services provided by Tri-State include payroll services, administration of employee benefits, workers' compensation insurance coverage, customer invoicing and accounts receivable collection services.

28. Tri-State charges the Company an amount equal to the actual wages and associated payroll taxes for the employee plus an agreed upon rate for workers' compensation and health insurance as well as an administrative fee.

29. Corporate Resource Services' subsidiaries: Accountabilities, CRD, Diamond Staffing, ICG, Insurance Overload, and TS Staffing are parties to account purchase agreements with Wells Fargo Capital Finance (the "Account Purchase Agreements"), an operating division of Wells Fargo Bank, N.A. ("Wells Fargo"). Pursuant to the Account Purchase Agreements, a maximum amount of $80.0 million of accounts receivable can be financed through Wells Fargo (the "Facility"). The Facility is personally guaranteed by the Company's majority shareholder. The Facility allows for 90% of qualifying receivables to be funded. The Facility calls for twice weekly net settlement of the additions, required repurchases and customer repayments.

## Defendant's False and Misleading Statements

30. The Class Period begins on July 1, 2014, when the Company filed a Form 10-K for the fiscal year ended January 3, 2014 (the "2013 10-K") with the SEC, which provided the Company's year-end financial results and position. The 2013 10-K stated that the total amount charged by Tri-State for the Fiscal Years 2013 and 2012 was $717.2 million and $596.2 million, respectively. The 2013 10-K was signed by Defendants Messina, Golde, J. Cassera, R. Cassera, Altucher, Foley, Amato, Clarke, and Melby. The 2013 10-K contained signed certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX") by Defendants Messina and Golde attesting to the accuracy of the financial condition and results of operations of the Company.

31. On August 20, 2014, the Company filed a Form 10-Q for the quarterly period ended April 4, 2014 (the "1Q2014 10-Q") with the SEC, which provided the Company's quarterly financial results and position. The 1Q2014 10-Q was signed by Defendants Messina and Golde. The 1Q2014 10-Q contained signed certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX") by Defendants Messina and Golde attesting to the accuracy of the financial condition and results of operations of the Company.

32. On September 25, 2014, the Company filed a Form 10-Q for the quarterly period ended July 4, 2014 (the "2Q2014 10-Q") with the SEC, which provided the Company's quarterly financial results and position. The 2Q2014 10-Q was signed by Defendants Messina and Golde. The 2Q2014 10-Q contained signed SOX certifications by Defendants Messina and Golde attesting to the accuracy of the financial condition and results of operations of the Company.

33. On November 14, 2014, the Company filed a Form 10-Q for the quarterly period ended October 3, 2014 (the "3Q2014 10-Q") with the SEC, which provided the Company's quarterly financial results and position. The 3Q2014 10-Q was signed by Defendants Messina and

Golde. The 2Q2014 10-Q contained signed SOX certifications by Defendants Messina and Golde attesting to the accuracy of the financial condition and results of operations of the Company.

34. The statements referenced in ¶¶ 30 – 33 above were materially false and/or misleading because they misrepresented and failed to disclose the following adverse facts pertaining to the Company's business, operational and financial results, which were known to Defendants or recklessly disregarded by them. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (1) TSE has a material unpaid federal payroll tax liability; (2) TSE's material unpaid federal payroll tax liability has a potential adverse impact on TSE and the Company; and (3) as a result of the foregoing, Corporate Resource Services' SEC filings were materially false and misleading at all relevant times.

35. On December 9, 2014, the Company filed a Form 8-K with the SEC announcing an amendment to the Account Purchase Agreements (the "Amendment") with Wells Fargo. Pursuant to the Amendment, the Company and each of its subsidiaries agreed to: (i) deliver to Wells Fargo, on or before December 19, 2014, a proposal letter to provide debt or equity financing to the Company in an amount no less than, and the proceeds of which to be used to repay in cash in full, all indebtedness, liabilities and obligations of the Company and its affiliates to Wells Fargo under the Account Purchase Agreements and related documents; (ii) deliver to Wells Fargo, on or before January 15, 2015, a commitment letter with respect to such financing proposal, and (iii) repay all amounts owing to Wells Fargo under the Account Purchase Agreements on or before January 31, 2015.

36. On December 22, 2014, the Company issued a press release entitled "Corporate Resource Services Confirms Compliance with Wells Fargo Account Purchase Agreements," which stated in relevant parts:

> Corporate Resource Services, Inc. (CRRS), (the "Company" or, "CRS"), a diversified technology, staffing, recruiting, and consulting services firm, continues to make progress in its refinancing process with investment bank, Carl Marks Advisors. The Company and Carl Marks are currently in discussions with potential new lenders and have received letters which achieved the December 19th, 2014 milestone in its amendment with Wells Fargo Bank, National Association.
>
> "We are pleased to be moving forward in our financing process and are working closely with our current and prospective lenders," said John P. Messina, Chief Executive Officer of Corporate Resource Services.

37. The statements referenced in ¶ 36 above were materially false and/or misleading because the Company was in fact not in compliance with the Tangible Net Worth covenant under the Account Purchase Agreements as of November 30, 2014.

**The Truth Emerges**

38. On September 29, 2014, the Company announced the abrupt resignation of Defendant Amato on September 28, 2014, who would be replaced by Defendant Holzer.

39. On January 12, 2015, the Company announced that abrupt resignation of Defendant Golde effective January 12, 2015 for "personal reasons," who would be replaced by Joseph P. Ciavarella.

40. On this news, shares of the Company fell $0.05 per share or over 4% to close at $1.07 per share, damaging investors.

41. On February 3, 2015, the Company filed a Form 8-K with the SEC, which revealed that: (i) as of November 30, 2014, the Company was not in compliance with the Net Worth covenant under the Account Purchase Agreements; (ii) on January 27, 2015, the Company learned that TSE has a material unpaid federal payroll tax liability, which the Company's Audit Committee is investigating; (iii) on January 28, 2015, Wells Fargo indicated to the Company that it would need to reconsider funding the Company's operations through the Account Purchase Agreement;